THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CR-48-FL
No. 5:11-CV-484-FL

| | | |
|---|---|---|
| TONY VINES JR., | ) | |
| | ) | |
| Petitioner, | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This matter comes before this court on the government's motion to dismiss [DE-51]

Petitioner Tony Vines, Jr.'s ("Vines" or "Petitioner") motion [DE-45] under 28 U.S.C. § 2255 to

vacate, set aside, or correct his sentence. Vines responded to the motion [DE-61] to which the

government replied [DE-62]. Accordingly, the motion is ripe for review.[1] This motion was referred

to this court and is considered here as a recommendation to the District Court. *See* 28 U.S.C. §

636(b)(1)(B); FED. R. CRIM. P. 59(b)(1). For the reasons stated below, it is recommended that the

government's motion be allowed and Petitioner's motion be denied.

---

[1]     On 17 November 2011, Vines filed a motion [DE-50] to amend or supplement his § 2255
motion. The government does not oppose Vines' motion to amend. *See* Gov't Mem. Supp. Mot.
Dismiss ("Gov't Mem.") at 3 n.1 [DE-52]. The amendment of § 2255 pleadings is governed by
Rule 15 of the Federal Rules of Civil Procedure. *See United States v. Pittman*, 209 F.3d 314, 317
(4th Cir. 2000). A party may amend his pleading once as a matter of right prior to the filing of a
responsive pleading. FED. R. CIV. P. 15(a). Otherwise, a party may amend his pleading only by
leave of court. *Id.* Absent bad faith, undue prejudice to the opposing party, or futility of amendment,
leave to amend under Rule 15(a) shall be freely given. *See Foman v. Davis*, 371 U.S. 178, 182
(1962). Given Vines' amended § 2255 action is timely (as explained below) and the government
does not oppose the motion, Vines' motion to amend [DE-50] is ALLOWED.

# I. BACKGROUND

On 3 May 2010, Vines pled guilty pursuant to a Memorandum of Plea Agreement ("the plea agreement") [DE-20] to a one-count indictment [DE-1] charging him with possession with intent to distribute more than five grams of crack cocaine and a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1). As charged, that offense carried a minimum term of five years imprisonment and a maximum term of forty years. 21 U.S.C. § 841(b)(1)(B). The indictment included an allegation that Vines had incurred "two or more prior felony drug convictions." [DE-1 at 2]. Accordingly, prior to sentencing, the Government filed a notice pursuant to 21 U.S.C. § 851, memorializing its intention to seek an enhanced penalty. [DE-16]. Specifically, the Government's § 851 notice subjected Vines to a total statutory maximum sentence of life imprisonment, with a mandatory minimum of ten years. *See* 21 U.S.C. § 841(b)(1)(B).

For purposes of calculating Vines' advisory United States Sentencing Guideline ("USSG" or "Guideline") range, the Presentence Investigation Report ("PSR") determined that Vines was accountable for a total marijuana equivalency of 1,835.471 kilograms, resulting in a base offense level of 30.[2] PSR ¶ 39 [DE-22].[3] However, under the advisory guidelines, Vines' prior North Carolina felony convictions placed him into career offender status, pursuant to advisory USSG § 4B1.1. Application of career offender status increased Vines' base offense level to 37, *see* USSG

---

[2]     The PSR relied on the 2009 edition of the U.S. Sentencing Commission Guidelines Manual ("the Guidelines").

[3]     A marijuana equivalency of 1,835.471 equates to a base offense level of 32. USSG § 2D1.1(c). However, pursuant to then-existing USSG § 2D1.1, Appl. Note 10(D), Vines' base offense level was reduced to 30 since his offense involved crack cocaine. *See* PSR ¶ 39. The November 2010 guideline amendments eliminated Application Note 10(D). *See* USSG, App. C, Vol. III, Amend. 748 at 377.

§ 4B1.1(b), from which three points were subtracted in light of his acceptance of responsibility, *see* USSG § 3E1.1(b), resulting in a total offense level of 34. PSR ¶¶ 45-47. Combined with a criminal history category ("CHC") of VI,[4] Vines' advisory Guideline imprisonment range was determined by the Probation Officer to be 262 to 327 months.

At sentencing on 16 August 2010, Vines, through counsel, argued the Probation Office improperly had imposed career offender status under USSG § 4B1.1, in light of the Supreme Court's ruling in *Carachuri-Rosendo v. Holder*, __ U.S. __, 130 S. Ct. 2577 (2010). Specifically, Vines argued the rationale underlying *Carachuri-Rosendo* rendered indefensible the Fourth Circuit Court of Appeals' interpretation of what constituted a "felony" under North Carolina's Structured Sentencing Act. *See United States v. Harp*, 406 F.3d 242 (4th Cir. 2005);[5] Sentencing Proceedings Tr. at 7-10 [DE-38]. Vines' argument impacted his objections to application of both career offender status as well as § 851 statutory enhancement. The trial court overruled Vines' objections citing *Harp* as binding precedent, but allowed the Government's USSG § 5K1.1 motion for reduction in sentence based on Vines' substantial assistance, and entered a sentence of 190 months

---

[4]    Vines' criminal history totaled 10 points, which included one point pursuant to USSG § 4A1.1(e) as Vines' offense was committed within two years of release from custody (hence the name "recency point" or "recency enhancement"), which equates to a CHC of V. *See* PSR ¶ 23. However, as a result of Vines' career offender status, his CHC was VI. *Id.* ¶ 24.

Section 4A1.1(e) was eliminated in November 2010 pursuant to Amendment 742 to the Guidelines. *See* USSG, App. C, Vol. III, Amend. 742 at 354. Amendment 742, however, was not made retroactive. *See* USSG § 1B1.10(c) (identifying retroactive amendments to the Guidelines and excluding Amendment 742).

[5]    In *Harp*, the Fourth Circuit held that to determine whether a prior North Carolina conviction was a felony for purposes of the Guidelines – that is, a crime punishable by more than a year in prison – a court should consider "the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history" and not the maximum sentence that could be imposed on the actual defendant being sentenced. *Harp*, 406 F.3d at 246-47 (emphasis in original).

3

imprisonment.[6] *See* Sentencing Proceedings Tr. at 6-11 [DE-38].

Although Vines' plea agreement contained a waiver of his appeal and post-conviction rights, he nevertheless appealed his sentence, again advancing his contention that *Carachuri-Rosendo* precluded his § 851 enhancement and application of career offender status. [DE-29]. On 1 March 2010, the Fourth Circuit Court of Appeals dismissed Vines' appeal, finding that "Vines knowingly and voluntarily waived his right to appeal and that the sentencing claim he raises falls within the scope of his appellate waiver." *United States v. Vines*, No. 10-4925 (4th Cir. Mar. 1, 2010) [DE-41].

It does not appear that Vines petitioned the Supreme Court for a writ of certiorari. Therefore, the one-year limitations period for instituting a motion for relief from sentence under § 2255 began 90 days from the date on which the appellate court's judgment was entered. *See Clay v. United States*, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari with [the Supreme Court of the United States] on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."); SUP. CT. R. 13(1), (3) (requiring certiorari petitions to be filed within ninety days after entry of a judgment and explaining "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate). In this case, the Fourth Circuit entered judgment dismissing Vines' appeal on 1 March 2011 and Vines' time for filing any petition for a writ of certiorari expired on 30 May 2011. *See* SUP. CT. R. 13(1), (3). Thus, under *Clay*, Vines' judgment of conviction became final, and the one year limitation period began to run, on 30 May 2011. Vines' motion to vacate, set aside or correct his sentence pursuant

---

6       Specifically, the government moved for a 25 percent downward departure from the bottom of the Guideline range (i.e., 262 months), which equated to 196 months. [DE-23].

4

to § 2255 was therefore timely filed on 19 September 2011. On 18 November 2011, the government filed a motion to dismiss Vines motion under § 2255. [DE-51]. On 17 November 2011, Vines timely filed a motion [DE-50] to amend or supplement his § 2255 motion.

On 17 August 2011, during the limitations period, the Fourth Circuit Court of Appeals announced its decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc). In *Simmons*, the Fourth Circuit acknowledged its rationale in *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005) was incorrect in light of *Carachuri-Rosendo*, and held that a defendant's prior conviction for which he could not have received more than a year in prison under North Carolina's mandatory Structured Sentencing Act, N.C. Gen. Stat. § 15A-1340.17, was not "punishable" by more than one year in prison and is not, therefore, a felony offense for purposes of federal law. *Simmons*, 649 F.3d at 243-48. That is, *Simmons* makes clear that any defendant whose sentence was enhanced on the basis of one or more prior convictions for which he could not have received more than one year in prison under the mandatory Structured Sentencing Act was sentenced in error. *See id.* at 250. The en banc *Simmons* opinion was consistent with Vines' preserved argument that his prior North Carolina convictions were not viable predicates for either USSG career offender treatment or statutory enhancement under § 851.

## II. LEGAL STANDARDS

### A.    Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be

5

proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

**B.     28 U.S.C. § 2255**

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. *See United States v. Frady*, 456 U.S. 152, 164-65 (1982). However, prisoners in federal custody may attack the validity of their convictions pursuant to 28 U.S.C. § 2255. Section 2255 provides a means for a defendant convicted of a federal offense to collaterally attack a conviction or sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was

6

without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]hus § 2255 relief is not limited to constitutional error in a conviction or sentence." *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999). However, where a petition seeks relief from a nonconstitutional error, "the scope of review . . . is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure." *Id.*; *see also Johnson v. United States*, Nos.3:09-CV-32,3:08-CR-60, 2010 U.S. Dist. LEXIS 126212, at *27, 2010 WL 4955700, at *10 (N.D. W. Va. Nov. 1, 2010) ("A claim not attacking the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a 'miscarriage of justice.'") (*citing United States v. Addonizio*, 442 U.S. 178, 185 (1979)). "In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 U.S. Dist. LEXIS 113549 at *5, 2010 WL 4484447, at *1 (E.D.N.C. Oct. 25, 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

Notwithstanding, a petitioner is free to "waive his right to collaterally attack his sentence and conviction, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005); *see also United States v. Wessells*, 936 F.2d 165, 167 (4th Cir. 1991) (waiver is effective only insofar as it is the result of a knowing and intelligent decision to forgo the right to appeal). A waiver will be upheld if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver. *Id.* at 220 n.2. The Fourth Circuit has

7

identified a narrow class of claims that fall outside the scope of a valid waiver of collateral attack rights and of direct appeal rights: (1) claims that the sentence was imposed in excess of the maximum penalty provided by law, (2) claims that the sentence was based on a constitutionally impermissible factor such as race, or (3) claims that the defendant was deprived of effective assistance of counsel at a proceeding following the entry of the waiver, such as at sentencing. *United States v. March*, No. 3:08-590-CMC, 2012 U.S. Dist. LEXIS 22178, at \*11, 2012 WL 570183, at \*4 (D.S.C. Feb. 22, 2012) (citing *United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994) and *United States v. Marin*, 961 F.2d 493, 496 (4th Cir.1992)). Moreover, courts typically "refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice." *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005) (quoting *United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003)).

### III. DISCUSSION

Vines asserts three grounds for relief:

(1)     the prior North Carolina state convictions upon which the court based its career offender designation do not qualify as predicate convictions under section 4B1.1(a) of the United States Sentencing Commission Guidelines ("USSG") in light of *Simmons* ("the *Simmons* claim");

(2)     the statutory penalties set forth in 21 U.S.C. § 841, as amended by the Fair Sentencing Act of 2010 ("FSA"), should have applied ("the FSA claim"); and[7]

---

[7]     It is unclear whether Vines' second ground in support of his motion could be deemed a request for reduction in sentence as a result of the recent crack cocaine amendments to the Guidelines. *See* Pl.'s Mot. at 5 ("The Defendant was sentenced under 100 to 1 crack to powder ratio rather than 18 to 1."). To the extent Vines is seeking a sentence reduction, "a motion pursuant to 18 U.S.C. § 3582(c) is appropriate, not a motion to vacate under 28 U.S.C. § 2255." *Walker v. United States*, Nos. 7:07-CR-76-1-BR, 7:10-CV-176-BR, 2011 U.S. Dist. LEXIS 38232, at \*6 n.1, 2011 WL 1337409, at \*2 n.1 (E.D.N.C. Apr. 7, 2011).

8

(3)    ineffective assistance of trial and appellate counsel.[8]

Pet'r's Mot. at 4-5 [DE-45]; Pet'r's Mot. Amend Pet'r's Mot. ("Pet'r's Amended Mot.") at 1 [DE-50].

The government concedes that Vines' guideline range would have been lower if he had been

sentenced under *Simmons*.[9] Gov't's Mem. at 5 n.2 [DE-52]. Nevertheless, relying on the waiver of

Vines' rights to contest the sentence in a post-conviction proceeding pursuant to 28 U.S.C. § 2255,[10]

the government urges the dismissal of Vines' motion. The government argues alternatively that if

the *Simmons* and FSA claims are not barred by the plea waiver, both claims remain subject to

dismissal because they allege non-constitutional errors. Vines, in turn, asserts that the plea

---

[8]    In response to the government's motion to dismiss, Vines contends the plea waiver is
unenforceable due to the ineffective assistance of trial counsel. Pet'r's Resp. at 3 [DE-61]. The court
construes this argument as a second motion to amend or supplement his § 2255 motion. As this
supplementation to his third claim for relief was timely raised, the Vines' second motion is
ALLOWED.

[9]    Not taking into account the revised base offense levels for crack cocaine, had Vines not been
sentenced as a career offender, Vines' total offense level would have been 27 (base offense level of
30 less three points for accepting responsibility) and his criminal history category a V, which
corresponds to a guideline range of 120 to 150 months imprisonment. *See* Gov't's Mem. at 5 n.2
[DE-52].

[10]    The provision in the plea agreement by which the government contends Vines waived his
right to challenge his sentence through collateral attack states as follows:

> The Defendant agrees . . . [t]o waive knowingly and expressly all rights, conferred by
> 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that
> related to the establishment of the advisory Guideline range, reserving only the right
> to appeal from a sentence in excess of the applicable advisory Guideline range that is
> established at sentencing, and further to waive all rights to contest the conviction or
> sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. §
> 2255, excepting an appeal or motion based upon grounds of ineffective assistance of
> counsel or prosecutorial misconduct not known to the Defendant at the time of the
> Defendant's guilty plea. . . .

[DE-20 at 1 ¶ 2(c)].

agreement and waiver of rights should not be enforced because (1) he was improperly classified as a career offender; (2) trial counsel failed to advise Vines prior to entering his guilty plea of the legal debate regarding the validity of *Harp* in light of *Carachuri-Rosendo*, and (3) appellate counsel failed to argue on appeal that Vines was improperly classified as a career offender and to file a petition for certiorari with the Supreme Court.

## A.    Vines' waiver was knowing and voluntary

A review of the record conclusively establishes Vines' waiver of his post-conviction rights was knowing and voluntary. During Vines' arraignment on 3 May 2010, the court reviewed the plea agreement with Vines, who has a GED. *See* PSR at 2 [DE-22]. In particular, the court specifically questioned Vines about the paragraph wherein Defendant agreed to waive his appellate and post-conviction rights, and Vines orally indicated that he understood the waiver and its ramifications. Arraignment Tr. at 16 [DE-39]; *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (stating "solemn declarations [made by a criminal defendant at plea proceedings] carry a strong presumption of verity" and constitute "a formidable barrier in any subsequent collateral proceedings"). Additionally, the court found, after conducting the plea colloquy, that Vines' "plea of guilty [was] knowingly and voluntarily made . . . ." Arraignment Tr. at 20 [DE-39]. Having determined Vines' waiver of his post-conviction rights was knowing and voluntary, the court must next determine whether Vines' current challenges to his sentence fall outside the waiver's scope.

## B.    *Simmons* Claim

Vines contends the *Simmons* claim is not barred by the appeal waiver in the plea agreement because the *Simmons* decision "frustrated the purpose of the plea agreement" and the enforcement of the waiver will result in "a complete miscarriage of justice." Pet'r's Resp. at 3.

10

1.    Frustration of Purpose Doctrine

Vines contends his purpose in entering the plea agreement was "to avoid the uncertainty of facing a life sentence," while the government's purpose was "to punish a recidivist using an enhancement and the career offender guideline." Pet'r's Resp. at 2. However, as a result of an intervening change in law, and in particular, the Fourth Circuit's decision in *Simmons*, Vines contends the dual purposes of the plea agreement have been frustrated.

"It is well-established that the interpretation of plea agreements is rooted in contract law, and that each party should receive the benefit of its bargain." *United States v. Bowe*, 257 F.3d 336, 345 (4th Cir. 2001); *accord United States v. Moulder*, 141 F.3d 568, 572 (5th Cir. 1998) ("The application of contract law to plea agreements is premised on the notion that the negotiated guilty plea represents a bargained-for quid pro quo.") (internal quotations omitted). That said, however, the Fourth Circuit has "recognized that the analogy of plea bargains to private contracts is not precise; as the Supreme Court has observed, the constitutional concerns undergirding the defendant's 'contract' rights in a plea agreement demand broader and more vigorous protection than that accorded private contractual commitments." *United States v. Burns*, 990 F.2d 1426, 1433 (4th Cir. 1993) (citing *Mabry v. Johnson*, 467 U.S. 504, 509 (1984)). For a party to be relieved of its obligations under a plea agreement, three elements must be present:

> First, the frustrated purpose must have been so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. Second, the frustration must be such that the intervening event cannot fairly be regarded as within the risks the frustrated party assumed under the contract. Finally, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made.

*United States v. Frownfelter*, 626 F.3d 549, 554 (10th Cir. 2010) (internal quotations omitted).[11] The frustration of purpose doctrine is inapplicable to the instant matter as Vines' misunderstands the purpose of the plea agreement. Despite Vines' contention to the contrary, a defendant's purpose in entering a plea agreement is to "avoid the uncertainty of a jury verdict" while the government's purpose is to "ensure [a] [d]efendant] serve[s] time" for his violation of the law, which in this case, is 21 U.S.C. § 841(a)(1). *United States v. Bunner*, 134 F.3d 1000, 1004-05 (10th Cir. 1998). Moreover, "[a] basic assumption underlying the parties' purposes was their belief that the conduct [to which] Defendant pled guilty amounted to a violation of" § 841(a)(1). *Bunner*, 134 F.3d at 1005. Vines does not argue that as a result of *Simmons*, the factual basis supporting his conviction has been destroyed. Accordingly, Vines cannot rely on the frustration of purpose doctrine in support of his argument that the court is not bound to enforce his plea waiver.

2.      Miscarriage of Justice Argument

Vines contends enforcement of the waiver will result in a "miscarriage of justice" because he is "actually innocent" of being a career offender. Pet'r's Resp. at 4 [DE-61] (citing *United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1994)). That is, Vines essentially contends he is serving an illegal sentence.

Vines' actual innocence claim, however, is foreclosed by the Fourth Circuit's decision in *United States v. Pettiford*, 612 F.3d 270 (4th Cir. 2010). In *Pettiford*, the Fourth Circuit held that "actual innocence applies in the context of habitual offender provisions only where the challenge to

---

[11]      While the Fourth Circuit has recognized that "[c]ourts have [] applied a variety of contract law doctrines to void or modify plea agreements," *United States v. Catala*, 134 Fed. Appx. 617, 624 (4th Cir. 2005), this court's research has not located a Fourth Circuit decision applying the frustration of purpose doctrine in the context of a plea agreement.

12

eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes." 612 F.3d at 284. Vines does not contend that he did not commit the offense for which he was convicted; rather, he contests the legal classification of his predicate convictions.

As Vines concedes, alleged errors in interpreting or applying the sentencing guidelines generally fall short of the complete miscarriage of justice showing necessary to support § 2255 relief. Pet'r's Resp. at 4 [DE-61]; *see Mikalajunas*, 186 F.3d at 496 (finding that an alleged error in enhancing defendants' "offense levels for restraint of the victim is merely an allegation of an ordinary misapplication of the guidelines that does not amount to a miscarriage of justice"); *United States v. Goines*, 357 F.3d 469, 477 (4th Cir. 2004) (stating "in the absence of 'a complete miscarriage of justice,' . . . "guideline claims ordinarily are not cognizable in § 2255 proceedings") (citations omitted). Indeed, as the Fourth Circuit explained, "[a] plea agreement, like any contract, allocates risk" and "the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompanies a guilty plea." *Johnson*, 410 F.3d at 153 (citations omitted).

The only Fourth Circuit case in which this issue has been addressed is the unpublished decision in *United States v. Yancey*, No. 11-4792, 2012 U.S. App. LEXIS 2035, 2012 WL 313752 (4th Cir. Feb. 2, 2012). In *Yancey*, the court held that the appellate waiver did not bar the defendant's claim that he was improperly classified as a career offender; however, the only basis provided by the court for its holding was the government's agreement at sentencing that the defendant could appeal his career offender classification. *See Yancey*, 2012 U.S. App. LEXIS 2035, at *3 n.1, 2012 WL 313752, at *1 n.1. Unlike in *Yancey*, here, the government did not agree at sentencing that Vines could appeal his career offender classification.

13

A recent line of cases in this district, all citing *Yancey*, has held that whether a defendant was properly classified as a career offender in light of *Simmons* is not barred by an appeal waiver, even if that waiver was knowing and voluntary. *See Woodard v. United States*, Nos. 5:10-CR-191-BO, 5:12-CV-106-BO, 2012 U.S. Dist. LEXIS 58626, at *7-*8, 2012 WL 1438477, at *2 (E.D.N.C. Apr. 25, 2012); *Mahorn v. United States*, Nos. 5:06-CR-128-BO, 5:12-CV-188-BO, 2012 U.S. Dist. LEXIS 52230, at *3-*4, 2012 WL 1253051, at *1 (E.D.N.C. Apr. 13, 2012); *Mathis v. United States*, Nos. 7:09-CR-139-BO, 7:11-CV-266-BO, 2012 U.S. Dist. LEXIS 48842, at *15, 2012 WL 1156438, at *5 (E.D.N.C. Apr. 6, 2012); *Graham v. United States*, Nos. 5:10-CR-18-BO, 5:12-CV-19-BO, 2012 U.S. Dist. LEXIS 46853, at *4, 2012 WL 1120018, at *1 (E.D.N.C. Apr. 3, 2012); *Farmer v. United States*, Nos. 5:02-CR-131-BO-1, 5:11-CV-642-BO, 2012 U.S. Dist. LEXIS 46840, at * 3, 2012 WL 1119920, at *1 (E.D.N.C. Apr. 2, 2012). This holding is premised on the finding that a *Simmons* claim is encompassed within the category of errors that fall outside the scope of post-conviction waivers because the defendant "could not have reasonably contemplated" this error when the plea agreement was executed. For the reasons stated above, however, this court understands *Yancey* differently and does not find that its holding supports a similar finding in this case.

As the Fourth Circuit has made clear, errors that a defendant "'could not have reasonably contemplated" involve only a "a narrow category of claims" and in particular, errors such as the imposition of a sentence in excess of the statutory maximum penalty or based on a constitutionally impermissible factor such as race. *See United States v. Powell*, 365 Fed. Appx. 540, 542 (4th Cir. 2010). Vines' sentence was not above the statutory maximum nor was it based on an impermissible

14

factor such as race.[12]  In short, Vines' sentence simply was not in violation of the law at the time it was imposed.  Accordingly, this court recommends that the government's motion to dismiss as to Vines' *Simmons* claim be ALLOWED and Vines' § 2255 motion be DENIED.

## D.    FSA Claim

Next, Vines seeks resentencing with the benefit of the FSA.  The government concedes the FSA applies to defendants, like Vines, sentenced after 3 August 2010; however, it argues Vines' sentence was "well below the 20-year statutory maximum that would have applied under the FSA;" thus, "[t]he failure to apply the FSA was therefore harmless error and did not constitute a fundamental defect in the proceedings."  Gov't's Mem. at 4 [DE-52].[13]

The FSA increased the threshold quantities of cocaine base or crack cocaine needed to trigger certain mandatory minimum sentences under 21 U.S.C.A. § 841(b).  *See United States v. Bullard*,

---

[12]    It is not disputed that at the time Vines entered his plea agreement, he could not have predicted the change in law.  In fact, when Vines entered his plea agreement, the Supreme Court had not issued its decision in *Carachuri-Rosendo*.  Indeed, a review of the procedural history procedural history of the relevant cases provides further support that the profound change in circuit law effectuated by *Simmons* was far from readily apparent.  Jason Simmons pled guilty to drug trafficking in federal court and was subjected to a sentencing enhancement under the Controlled Substances Act because the district court found his prior state conviction for marijuana possession was for an offense "punishable by imprisonment for more than one year."  The Fourth Circuit affirmed in an unpublished opinion.  *United States v. Simmons*, 340 F. App'x 141 (4th Cir. 2009).  The Supreme Court vacated that judgment and remanded the case to the Fourth Circuit for "further consideration in light of *Carachuri-Rosendo v. Holder*." 130 S. Ct. 3455.  On 16 February 2011, a panel of the Fourth Circuit held that *Carachuri-Rosendo* did not require a change in the previous holding. *United States v. Simmons*, 635 F.3d 140, 142 (4th Cir. 2011).  However, the Fourth Circuit voted to rehear the case en banc, and in a published opinion, the court of appeals vacated Mr. Simmons' sentence in light of *Carachuri-Rosendo*, holding that the opinion of the Supreme Court "clearly forelcose[d] reliance on *Harp*." *Simmons*, 649 F.3d at 247.

[13]    This concession is in line with the Memorandum from Attorney General ("AG") Eric Holder ("the Holder Memo"), dated 15 July 2011, wherein the AG concluded that the FSA's new mandatory minimum sentencing provisions should apply to all defendants sentenced after 3 August 2010. *See* http://www.fd.org/pdf_lib/Holder%20FSA%20memo%207.15.11.pdf (last visited May 8, 2012).

15

645 F.3d 237, 246 (4th Cir. 2011) (citing Pub. L. No. 111-220, 124 Stat. ). "Prior to the effective date (August 3, 2010) of the FSA, the amount of cocaine necessary to bring the mandatory minimum sentences into play was based on what is now viewed as the flawed 100:1 ratio of crack vs. powder cocaine." *United States v. Fisher*, 635 F.3d 336, 338 (7th Cir. 2011). In particular, under the pre-FSA version of § 841(b)(1), a defendant convicted of a prior felony drug offense, like Vines, faced a mandatory minimum ten-year sentence for possession of at least five grams of crack cocaine (Vines' offense), and a minimum twenty-year sentence for possession of at least fifty grams of crack cocaine. *Bullard*, 645 F.3d at 246; *see also* 21 U.S.C. § 841(b)(1)(A)-(B) (2010). The FSA raised the crack cocaine amounts necessary to trigger these ten- and twenty-year mandatory minimum sentences from 5 grams to 28 grams, and 50 grams to 280 grams, respectively, such that those defendants convicted of possessing smaller amounts of crack cocaine now face shorter required sentences. *Bullard*, 645 F.3d at 246 (citing Pub. L. No. 111-220, 124 Stat. 2372).

The Fourth Circuit has held that the FSA is not retroactively applicable to defendants sentenced before its enactment. *See id.* at 248 ("We agree with all eight circuits that have ruled on the issue that the FSA contains no express statement of retroactivity, nor can any such intent be inferred from its language.") (collecting cases). The Fourth Circuit, however, has not yet ruled on whether the FSA is retroactively applicable to a defendant, like Vines, sentenced for pre-FSA offenses after its enactment. *See id.* at 248 n.5 (reserving judgment on "whether the FSA could be found to apply to defendants whose offenses were committed before August 3, 2010, but who have not yet been sentenced"); *United States v. Christian*, 452 Fed. Appx. 283, 288 (4th Cir. 2011) (noting the Fourth Circuit has "not yet addressed the FSA's applicability to convictions involving pre-enactment conduct, but post-enactment sentencing"). In an unpublished case, the Fourth Circuit

16

acknowledged the Holder Memo, but did not take a position as to the eligibility of defendants like Vines for retroactive application of the FSA, leaving that determination to the district court. *See United States v. Barnett*, No. 11-4244, 2011 U.S. App. LEXIS 20803, at *2, 2011 WL 4842652, at *1 (4th Cir. Oct. 13, 2011) ("In light of the Attorney General's revised view on the retroactivity of the FSA, as well as the development of case law on this point in other jurisdictions, we think it appropriate, without indicating any view as to the outcome, to accord the district court an opportunity to consider the matter anew.").

On 27 October 2011, in the case of *United States v. Derrick Jones*, No. 5:09-CR-377-FL, 2011 U.S. Dist. LEXIS 124715, at *21, 2011 WL 5119064, at *6 (E.D.N.C. Oct. 27, 2011), the district court entered a memorandum opinion holding the FSA is not retroactive to a defendant, like Vines, sentenced after 3 August 2010. The district court recently reiterated its *Jones* decision, again finding the FSA is not retroactive to defendants like Vines whose offense conduct occurred prior to 3 August 2010, but who were sentenced after that date. *See Gill v. United States*, No. 5:09-CR-198-FL, 2012 U.S. Dist. LEXIS 28351, at *2, 2012 WL 707032, at *1 (E.D.N.C. Mar. 3, 2012).[14] In light of *Jones* and *Gill*, this court recommends Vines' motion to vacate with regard to the FSA claim be DENIED.[15]

---

[14]    The United States Supreme Court recently granted petitions for writs of certiorari in two now-consolidated cases, presenting the issue of whether the FSA applies to defendants who committed crimes before the FSA's effective date, but were sentenced after the FSA took effect. *See Dorsey v. United States*, 132 S. Ct. 759 (2011) and *Hill v. United States*, 132 S. Ct. 759 (2011).

[15]    This court notes further that even if Vines' argument was not foreclosed by *Jones* and *Gill*, the application of the FSA would not impact Vines' sentence. While the government concedes that "the FSA statutory penalties should apply to all sentencings held after the [FSA's] effective date []regardless of when the offense occurred, " Gov't's Mem. at 4, it contends nevertheless that the application of the FSA has no bearing in the instant matter as Vines' sentence falls "well below the 20-year statutory maximum that would have applied under the FSA." Gov't's Mem. at 4. That is,

**E.      Ineffective Assistance of Counsel Claims**

To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's representation was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Concerning the "deficient" prong, the petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689); *see Toribio-Ascencio*, 2010 U.S. Dist. LEXIS 113549 at *5 , 2010 WL 4484447, at *1 (explaining to satisfy the first prong, a "petitioner must show that the representation he received fell below an objective standard of reasonableness")(citing *Strickland*, 466 U.S. at 688). As to the "prejudice" component, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, a petitioner must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Zhan Gao v. United States*, 375 F. Supp. 2d 456, 463 (E.D. Va. 2005) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985))). In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Strickland*, 466 U.S. at 697 (explaining "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "to address both components of the inquiry

---

application of the FSA does not impact Vines' guideline range. This court agrees with the government's position.

if the defendant makes an insufficient showing on one").

"The standard for ineffective assistance of appellate counsel is generally the same as for trial counsel." *Yates v. United States*, Nos. 3:10-CV-14, 3:06-CR-20, 2011 U.S. Dist. LEXIS 120693, at *11, 2011 WL 4949648, at *4 (N.D. W. Va. Oct. 18, 2011) (citing *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000)); *accord Boyce v. United States*, Nos. 1:08-CV-5351, 1:06-CR-20-1, 2011 U.S. Dist. LEXIS 94970, at *29, 2011 WL 3804350, at *10 (W.D.N.C. Aug. 24, 2011) (stating "[b]oth prongs of *Strickland* apply with regard to appellate issues, just as with trial issues"). On review, appellate counsel is accorded "the presumption that he decided which issues were most likely to afford relief on appeal." *Bell*, 236 F.3d at 164 (internal quotation marks and citation omitted).

1.    Trial Counsel

Vines contends his trial counsel rendered ineffective assistance in failing to "advise[] of the ongoing legal debate concerning the use of North Carolina felonies for enhancements in the federal sentencing, until after he entered his plea of guilty." Pet'r's Resp. at 3.

Vines' entered his plea agreement on 3 May 2010, just over one month prior to the Supreme Court's 14 June 2010 *Carachuri-Rosendo* decision. Vines' trial counsel therefore properly advised Vines' based on *Harp*, the law of the Fourth Circuit at that time, of the implication of Vines' predicate state offenses and his resulting classification as a career offender. At the time of Vines' August 2010 sentencing, however, trial counsel properly preserved his objections to Vines' career offender status, specifically objecting to the validity of then-existing Fourth Circuit law in light of the *Carachuri-Rosendo* decision. Moreover, the court observes that trial counsel "had no valid basis for objecting [to Vines' state convictions] being deemed felony convictions for purposes of the career offender guideline, USSG § 4B.1.1," given *Harp* remained the law of the Fourth Circuit at the time

19

of Vines' sentencing. *Watson v. United States*, Nos. 5:10-CR-00294-BR, 5:11-CV-640-BR, 2011 U.S. Dist. LEXIS 133056, at *2 (E.D.N.C. Nov. 17, 2011); *see also United States v. McNamara*, 74 F.3d 514, 516-17 (4th Cir. 1996) (holding trial counsel was not constitutionally deficient for following controlling circuit law at the time, even though the Supreme Court had granted certiorari in another case to resolve a circuit conflict regarding that law). Accordingly, the court recommends the government's motion to dismiss as to Vines' third claim for relief regarding trial counsel be GRANTED and that Vines' § 2255 ineffective assistance of trial counsel claim be DENIED.

2.     Appellate Counsel

Vines' ineffective assistance claim against appellate counsel is far from a model of clarity; however, it appears Vines faults appellate counsel for failing to "raise the claim" that Vines was improperly sentenced as a career offender based on *Carachuri-Rosendo* and to file a petition for certiorari with the Supreme Court. *See* Pet'r's Amended Mot. at 2 [DE-50].

As to the first alleged error, the evidence of record indicates appellate counsel aggressively argued on Vines' behalf. In particular, appellate counsel filed a brief with the Fourth Circuit questioning "the continuing viability of [*Harp*] in the face of the Supreme Court's decision in [*Carachuri-Rosendo*], as applied to the determination of defendant's prior criminal record which ultimately condemned him to a career offender status under the [USSG]." Appellant's Br. at 5 [DE-52.1]. Accordingly, Vines' first alleged error is clearly without merit.

As to the second alleged error, there is no evidence of record that Vines' appellate counsel filed a timely petition for writ of certiorari on Vines' behalf. Vines contends counsel refused to do so stating "such a motion would be frivolous and that [the] claim would be without merit." Pet'r's Amended Mot. at 2 [DE-50]. "[T]he deprivation of the right to counsel in pursuing a writ of

20

certiorari is grounds for post-conviction relief." *Devine v. United States*, Nos. 5:07-CR-10-D, 5:10-CV-91-D, 2011 U.S. Dist. LEXIS 47423, at *2, 2011 WL 1675089, at *1 (E.D.N.C. May 3, 2011). However, unlike a direct appeal from a district court judgment to the court of appeals, a criminal defendant has no constitutional right to assistance of counsel to pursue a petition for writ of certiorari from the Supreme Court. *Ross v. Moffitt*, 417 U.S. 600, 617-18 (1974). Accordingly, "relief is unavailable pursuant to 28 U.S.C. § 2255." *Moscol v. United States*, Nos. 5:07-CR-3-01-F, 5:10-CV-93-F, 2010 U.S. Dist. LEXIS 120312, at *3-*4, 2010 WL 4704403, at *2 (E.D.N.C. Nov. 12, 2010) (citing *Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008)); accord *Morrow v. United States*, Nos. 3:08-CV-160, 3:05-CR-303, 2010 U.S. Dist. LEXIS 102572, at *5-*6, 2010 WL 3719521, at *2 (W.D.N.C. Sept. 17, 2010) ("Where there is no constitutional right to counsel, there can be no constitutionally ineffective assistance"). Thus, even assuming the truth of Vines' allegation, he fails to state a claim upon which § 2255 relief may be granted.

Accordingly, the court recommends the government's motion to dismiss as to Vines' third claim for relief regarding trial counsel be GRANTED and that Vines' § 2255 claim that his appellate counsel was ineffective for failing to (1) argue Vines was not a career offender and (2) file a petition for writ of certiorari in the Supreme Court be DENIED.

## IV. CONCLUSION

Based upon the following, the court ALLOWS Vines' motion [DE-50] to amend or supplement his § 2255 motion and recommends as follows:

(1)    The government's Motion to Dismiss [DE-51] be ALLOWED; and

(2)    Vines' Motion to Vacate, Set Aside or Correct Sentence [DE-45] be DENIED.

21

This, the 8 day of May, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge